The Honorable Geoff Buchanan State Representative P.O. Box 5541 Bella Vista, AR 72714-0541
Dear Representative Buchanan:
You have requested an Attorney General's opinion concerning Act 46 of 1999, which amends A.C.A. § 12-10-318(b)(2), so as to change the manner in which emergency telephone service charges are distributed. The pertinent language of the Act states:
 SECTION 1. Arkansas Code 12-10-318(b)(2) is amended to read as follows:
* * *
 (2)(B)(i) Not more than forty percent (40%) thirty-eight percent (38%)
of the total monthly revenues collected shall be distributed on a population basis to PSAP administrators based on CMRS call volume each political subdivision operating a 911 Public Safety Communications Center which has the capability of receiving CMRS 911 calls on dedicated 911 trunk lines for expenses incurred for the answering, routing and proper disposition of CMRS 911 calls.
Act 46 of 1999, Section 1, amending A.C.A. § 12-10-318(b)(2)(B)(i).
Concerning the above-quoted provision, you have asked:
 Will the PSAP distributions for 911 services be paid through the county, or will they be paid directly to the city that operates the 911 service?
It is my opinion that the PSAP distributions for 911 services will be paid directly to the political subdivision that actually operates the 911 Communications Center. That is, the distribution will be paid to the entity that receives the initial 911 call. In some cases, this political subdivision will be a county, and in others it will be a city.
My conclusion regarding this matter is based upon a "plain-meaning" reading of the Act. Nevertheless, some information about the background of the Act may be helpful in understanding this conclusion. Although it is not entirely clear from the face of Act 46 of 1999, it is my understanding that the emergency service fee that is the subject of your question was created for the purpose of enabling 911 communications centers to acquire the technology needed to be in compliance with an FCC mandate requiring such centers to be capable of receiving initial 911 calls from cellular telephones and of locating the origination point of such calls. Under previous law, the emergency fee was distributed on a call-volume basis to those centers that were already technically capable of receiving such calls. Consequently, the bulk of the fees were distributed to the few centers that already had the technical capability of receiving such calls, because they clearly had the largest call-volume. The result was that the centers that needed the funds to be able to acquire the technology were unable to receive distributions, because they had a low call-volume due to their technical inability to receive those calls.
It is my further understanding that Act 46 was intended to alleviate this situation, by allowing distribution based on population, rather than on call-volume. This type of distribution will enable centers that are not currently capable of receiving such calls to acquire the technology to do so, and use their distributions to pay for that technology.
As currently structured, some counties in Arkansas have only one 911 Communications Center, which is operated by the county. Other, more populous counties have more than one such center, some of which are operated by the city in which the center is located. The language of Act 46 reflects an intent to distribute 911 fees to the political subdivision that actually operates the communications center. More specifically, it reflects an intent to distribute the fees to the entity that can actually certify that it is technically capable of receiving initial 911 calls from cellular telephones and of determining the origination point of those calls.
The language reflecting this intent is clear and unambiguous. The distribution is to be made to "each political subdivision operating a 911 Public Safety Communications Center which has the capability of receiving CMRS 911 calls on dedicated 911 trunk lines for expenses incurred for the answering, routing and proper disposition of CMRS 911 calls." In some cases, these centers are operated by the county; in others, they are operated by the city. Therefore, the distribution should be made to whichever of the two actually operates the communications center by receiving initial 911 calls from cellular telephones.
This interpretation of the language of the Act is consistent with the well-established rule of statutory interpretation under which the Arkansas Supreme Court holds that statutory language should be interpreted "just as it reads, giving the words their ordinary and usually accepted meaning in common language." See, e.g., State ofArkansas, Office of Child Support Enforcement, Pulaski County v. Terry,
98-1279, Feb. 11, 1999. The ordinary and usually accepted meaning of the term "political subdivision" encompasses both cities and counties. Because both cities and counties operate 911 Communications Centers, they are each entitled, under the plain language of Act 46, to receive 911 service charge distributions if they do operate such a center.
Assistant Attorney General Suzanne Antley prepared the foregoing opinion, which I hereby approve.
Sincerely,
MARK PRYOR Attorney General
MP:SBA/cyh